# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:10-cr-0172-RLH-PAL |
| ) | |
| vs. ) | **O R D E R** |
| ) | (Appeal from Magistrate Judge's |
| YAKOV COHEN, ) | Detention Order–#76) |
| ) | |
| Defendant. ) | |

Before the Court is Defendant Yakov Cohen's **Appeal from Magistrate Judge's Detention Order** (#76, filed June 29, 2010), pursuant to 18 U.S.C. §3145(b). The United States filed its Opposition (#82) on July 16, 2010. Defendant Cohen filed his Reply (#83) on July 21, 2010, and the matter was submitted to the Court, which has undertaken a *de novo* review (*see U.S. v. Keonig*, 912 F.2d 1190, 1992 (9th Cir. 1990), including review of the audio record of the various hearings conducted by Magistrate Judge Johnston on this issue, the original motion, and the supplemental briefs and exhibits of both parties involved in this issue.

It appears Defendant Cohen anticipated a further hearing, but his present appeal contains 292 pages, of which only 15 pages are of the actual appeal and argument and the balance are exhibits. The Government's Opposition contains 59 pages, of which 18 pages are arguments and the balance are exhibits. Defendant's original motion (#24) contained a combined 193 pages. In addition to the original hearing on detention, there have been two additional hearings. Accordingly, there has been more than sufficient opportunity for the parties to present both arguments and

evidence as to preclude the necessity of further hearings.  The Court is mandated to address the appeal without delay and it will do so.

It is unclear whether Judge Johnston ultimately ordered detention on both a danger of nonappearance and danger to the community.  It is clear the original Order of Detention (#47) dated April 22, 2010, was made on the basis that Defendant Cohen presented "a serious risk that [he] will not appear, finding "by a clear preponderance of the evidence that the defendant is a risk of flight based upon the nature of the charges of this case, status as a citizen of Israel subject to a detainer by BICE, lack of any demonstrated community ties, lack of any demonstrated family ties, lack of any lawful employment, lack of any financial resources demonstrating ties to the community or ability to post bail."

However, following the Defendant's request to reopen the detention hearing, based upon new evidence, the United States, now in possession of an Indictment, rather than a mere complaint, presented new evidence of its own, raising the issue of danger to the community and specifically to victims/witnesses.  Defendant Cohen not only presented new evidence, mostly regarding the security for Cohen's release on bond, but which included evidence of and response to the United States' allegations of danger to the community. The amended Pretrial Report of April 15, 2010, added a recommendation for detention based on danger.  Judge Johnston's oral ruling at the last hearing, which noted the difficulty of posting property of a third person, situated in New York, and the evidence of threats and the nature of the threats, and finding that while the weight of the evidence presented was the least of the considerations, it was still a legitimate consideration, concluded that he found no evidence presented to warrant release under the circumstances.

Accordingly, the Court considers itself free to consider either or both bases for detention as a subject of this appeal as it conducts its *de novo* review.

THE LAW

A determination that a defendant poses a serious risk that the person will flee must be based upon a preponderance of the evidence. A finding that a defendant poses a danger to the

2

community or any other person, must be based upon clear and convincing evidence.  18 U.S.C. §3142(f).

The presentation of evidence is not limited to sworn testimony and formal exhibits, but the parties can "present information by proffer or otherwise." *Id*.  Both have done so here.

There is a presumption in favor of release on personal recognizance or on "an unsecured appearance bond in an amount specified by the court." 18 U.S.C. §3142(b).  That presumption is clearly overcome by the presentations and proffers present here.

The factors to be considered by the Court in making this determination are (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence; (3) the person's character, family ties, employment, financial resources, length of residence in the community, community ties, and past conduct; (4) the nature and seriousness of danger to any person or the community that would be posed by the person's release; and the source, nature and location of property offered to secure the person's appearance.  18. U.S.C. §3142(g).

The Ninth Circuit has declared that item (2), the weight of the evidence, is the "least important factor" to be considered by the Court.  *U.S. v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985).  (The case cited by Defendant for this proposition is a 1975 case, which preceded the passage of the Bail Reform Act of 1984.)  However, the Ninth Circuit has not held that it is not important, or not to be considered at all, nor has it held that it is to be given "little" consideration.  The finding is merely that among the important factors, the others are more important.  Among those other factors is the nature and circumstances of the offense.  In this case, it is not the weight of the evidence, but its nature and circumstances that demonstrates Defendant Cohen's danger to the community and, specifically, to at least one of the victim/witnesses in this case, which the evidence presented suggests was actually beaten and threatened with his life because he went to the police about the threats made against him.

////

FINDINGS OF THE COURT

Based upon the arguments and proffers of counsel, the affidavits and exhibits presented to the Court, the Court makes the following findings:

I    RISK OF NONAPPEARANCE OR FLIGHT

Defendant Cohen is a citizen of Israel, not of the United States, and is subject to a detainer by the Department of Immigration and Customs Enforcement (ICE). Even though his parents and his uncle are U.S. citizens, his parents appear to live in Israel. And, although his parents are citizens and Defendant Cohen has held a green card for a decade, he has apparently chosen not to become a U.S. citizen. He owns no property in Nevada and does not maintain a residence in the state. He purports to own an interest in a business that operates here, but does not offer the business or its assets as collateral to secure his appearance.

He has not demonstrated any lawful employment, other than his purported business interests. The charges in this case arise out of his alleged attempts to enforce, by violence or threats of violence, his claim to certain business interests in Las Vegas.

He lacks any demonstrated family ties which are sufficient to assure his appearance. It is alleged that his father lives here part of the time (and part of the time in Israel), but his father had to return from Israel in an effort to secure his son's release. His father purportedly lives with Defendant Cohen's uncle when residing here, hardly sufficient evidence of family ties which would assure Defendant Cohen's remaining here or appearing for court as required. His mother does not live here. He purportedly has a wife, but she also currently lives in Israel and has not returned to assist in Defendant Cohen's release. It is also reported he has a girlfriend in the United States. None of this provides any binding relationships or ties to this community.

There do not appear to be any community ties. Although he has claimed business interests here, he has been operating or controlling those interests from elsewhere, even from Israel. Furthermore, He has threatened that he could return to Israel and would be immune from the reach of authorities in Las Vegas.

4

1         Although he has proffered his father and uncle as third party custodians, it is admitted that the reason for both is that his father is often in Israel, thus ineffective as a preventative to his fleeing, thus leaving an uncle whose only claimed ability would be to notify authorities if the Defendant fled.

        Defendant has offered to waive extradition from Israel. Although presented with newspaper accounts of extradition from Israel of two people, Israel has been reluctant to extradite its citizens to the United States to face serious criminal charges. Moreover, there is no guarantee Defendant would necessarily return to Israel if he leaves the United States. Since he obviously can operate his business while absent from this state, he could go to any European country or other country which does not have an extradition treaty with the United States. Lastly, on this issue, even if the United States were successful in obtaining his extradition from Israel, the process takes several years, during which he would be free to carry out his threats to use individuals associated with Israeli organized crime to do harm to the victims in this case.

        In recorded conversations, Defendant bragged that he would be going to Israel where he had the ability to keep the police from interfering with his carrying out of his threats against the victims/witnesses in this case.

        Defendant offers to post an apartment building in New York, owned by his aunt, together with two properties in Las Vegas to assure that he will not flee. However, none of these properties belong to Defendant Cohen and he would suffer no direct consequences if they were lost. One of the two properties in Las Vegas is a vacant condo, the economic viability of which unknown. The other is a property which appears to be subject to liens. The property in New York also has limited utility as security. Defendant's aunt has only offered a lien on the property. For none of the properties has there been a grant, bargain sale deed offered, as is the usual procedure. Furthermore, even if one were given to the Court, it would have to undertake the rental, maintenance and expense of an apartment complex just to try to protect the purported security. There are apparently other properties owned by Defendant's family, but those properties have not been proffered. Nor, has

Defendant offered to post cash bail, although the evidence proffered by the United States suggests that millions of dollars flow through his business account.  This proposed security offers no assurance to the Court that it will deter Defendant Cohen from leaving the jurisdiction or that their loss would severely hurt him directly or through his family such that with would assure his appearance.

Finally, even though Rabbi Shmuel Attal promises that Defendant Cohen will keep his word when he says he will abide by all conditions of his release, in recorded conversations Defendant Cohen has stated that he does not believe in Rabbis.  Rather, he believes in the mafia to solve his problems.

The Court finds there is a clear preponderance of evidence that Defendant Cohen poses a risk of flight to avoid prosecution and that there are no combination of conditions that will assure his presence.

II.     RISK OF DANGER TO THE COMMUNITY AND OTHER PERSONS

The Indictment (#8) accuses Defendant Yakov Cohen, and others of attempting to obtain from two individuals, identified as M.O. and M.K, property, money and ownership of their business by extortion and the wrongful use and threatened use of force, violence and fear. He is also accused of interstate and foreign travel in aid of racketeering to further threaten M.O. and M.K. to try to force them to pay Cohen money and to relinquish their business of the retail sale of beauty products.  The Indictment alleges that Cohen arranged for Moshe Barmuha, who has a history of violence, to come from California to Nevada to further the efforts at extortion by threats of physical violence against M.O. and M.K.

The information proffered by the United States indicates that Barmuha was convicted in Israel in 2004, of aggravated battery, and, that he has lost his lower right arm as a result of handling a pipe bomb in Israel which detonated prematurely.  Barmuha is a reputed member of organized crime and an "alleged killer" in Israel.  He has been convicted in Israel for many crimes, including numerous times of possession and trafficking in dangerous drugs, for possession of

1   unlawful weapons for criminal intent or causing intentional injury, burglary, and armed robbery.

2      Barmuha, or persons stating they were acting on his behalf, have called M.K.,
3   threatening him to meet with Barmuha and he could not hide and his family could not protect him.
4   He found several threatening notes on his apartment door, in Hebrew, that if he refused to come to
5   Barmuha he could not be protected by friends or family, and leaving a final note with the picture of
6   a rifle scope sight drawn on it.  As a result of these threats, and upon the advice of an LVMPD
7   officer, he purchased a Sig Sauer .380 caliber handgun.

8      M.K. was assaulted by two unknown males, near his residence.  He was pushed so
9   hard against his vehicle that it left a large dent in the side.  He was beaten and, upon falling to the
10  ground, pulled the handgun, which apparently caused the attackers to flee.  He fired a shot, but was
11  uncertain whether he had hit anyone.  In a consensual recording of a conversation with a cooperat-
12  ing individual, Defendant Cohen acknowledged that the assailants, two Russians, had been sent by
13  him and that one had actually been hit by M.K.'s bullet, in the posterior.  Cohen also told the
14  cooperating individual that he, Cohen, would be getting even with M.K. for causing the police to
15  investigate the assault.  They discussed Barmuha's connection with Cohen, Barmuha's criminal
16  history, his membership in an Israeli organized crime family and the prior involvement with te
17  exploding pipe bomb.  Defendant Cohen told the cooperating individual that one of the cars of
18  M.O.'s family is supposed to explode and only then will M.O. and M.K. start understanding and
19  cooperate.  When asked why he did not offer to settle with M.O. and M.K., Cohen said, "Listen, I'm
20  not gonna come to them with offer.  The only thing I'm gonna come to them with is gonna be
21  explosives."  In a three-way international telephone call among Defendant Cohen, Barmuha, and
22  victim M.O. in September 2009, express threats were made to physically harm victim M.K. if
23  Cohen's extortion demand was not met, namely that Barmuha "was going to kill [M.K.], chop him
24  up, cut him up like wood and take his fingers out."  M.K. is now in hiding, afraid for his life.

25     Victim M.O. has likewise received threats from Cohen and various persons speaking
26  on behalf of Defendant Cohen.  When M.O. refused to meet in a hotel room with Defendant Cohen

7

and Barmuha, because he was afraid of being "kidnaped, attacked, or killed," he was called by Avi, an associate of Cohen, who threatened that if M.O. did not comply with the demands to resolve the matter that Barmuha would be sent to collect the debt, that "these guys" were capable of collecting the debt and they were not afraid of the police, that they have other places to go and they can always go back home to Israel.  At a subsequent meeting to discuss a settlement, although M.O. brought documents in anticipation of some sort of resolution, Cohen brought no documents, only an associate who was described as being there as "muscle" for Cohen.

When M.O. successfully passed a polygraph demanded by Barmuha and was too nervous to take a second, Barmuha and Cohen were upset.  M.O. later found a white rose attached to his front door with a note which read, "Warm regards from a friend of Moshe B[armuha]."  M.O. understood the meaning of the white rose was a threat of death.  He received several telephone calls thereafter ordering him to settle the "thing" with Coby (a nickname for Cohen).

There are other recorded conversations involving Defendant Cohen which constitute threats of violence by Defendant Cohen, or by people acting on his behalf or in his interests, toward the victims in this case.  The Court will not reiterate all those conversations, but they are in the documents, arguments, and exhibits presented to the Court by the United States.

Taken together, the evidence proffered  presents clear and convincing evidence that Defendant Cohen is a danger to the community and specifically to the two victims, who will undoubtedly be witnesses in this case.

## DECISION

IT IS THEREFORE THE ORDER OF THIS COURT that Defendant Cohen's **Appeal from Magistrate Judge's Detention Order** (#76) is DENIED.

IT IS FURTHER ORDERED that Defendant Yakof Cohen's detention pending trial, as a risk of flight and as a danger to the community and to specific witnesses/victims, is

////

////

AFFIRMED, for the reasons found by Magistrate Judge Johnston, and for the reasons stated above, and the Court finds that there are no conditions or combination of conditions which will assure the appearance of Defendant Cohen or the safety of the community or persons therein.

Dated: August 10, 2010.

_____
Roger L. Hunt
Chief United States District Judge